TERRY L. DAVIS *v.* STATE OF INDIANA

[No. 1-677A132. Filed October 12, 1977. Rehearing denied November 16, 1977.]

*Kenneth L. Nunn*, of Bloomington, for appellant.

*Theodore L. Sendak*, Attorney General, *Jane M. Gootee*, Deputy Attorney General, for appellee.

## STATEMENT OF THE FACTS

LOWDERMILK, J. — Defendant-appellant Terry L. Davis appeals from a determination of the trial court wherein the trial court in a probable cause hearing determined that Davis knowingly and wilfully refused to take a breathalyzer[1] test, and as a result of Davis' refusal to take the breathalyzer test, the trial court, pursuant to IC 1971, 9-4-4.5-4(c) (Burns Supp. 1976), sent Davis' driver's license to the Commissioner of the Bureau of Motor Vehicles with a recommendation that Davis' license to drive be suspended for one year.

## FACTS

The facts most favorable to the State are: On March 7, 1977 a Bloomington police officer observed Davis driving an automobile in a slow, erratic manner. As it moved along, Davis' car straddled the lane markers, and after Davis had stopped the car for a red

---

1. The word *breathalyzer* as used in this opinion is used in its generic sense.

light, the car remained stationary until midway through the green light. Suspecting that Davis was driving under the influence of alcohol, the police officer stopped Davis.

After stopping Davis the officer observed that Davis had poor balance while standing, that he fumbled while extracting his driver's license from his wallet, and that his general attitude was hostile and obnoxious. The officer further testified that he smelled alcohol on Davis' breath and that Davis' eyes were red.

The officer handcuffed Davis and took him to the police station for the purpose of having a breathalyzer test administered to Davis. En route the officer explained the Indiana Implied Consent Law.[2] Davis said that he understood the law, but nevertheless expressed an intention that he would refuse to take the breathalyzer test.

At the station Davis refused to take the breathalyzer test, asserting that he wanted to talk to his attorney first. After he was denied the opportunity to speak with his attorney, Davis continued to refuse to take the breath test. After making several attempts to get Davis to take the breath test, the officer certified to the trial court that Davis knowingly and wilfully refused to take the test.

### ISSUES

The issues presented to this court for review are as follows:

1. Whether Davis' driving was sufficiently erratic to justify the stop made by the police officer.

2. Whether Davis knowingly and wilfully refused to take the breathalyzer test, in light of the fact that Davis' request to consult with his attorney had been denied.

---

2. See IC 1971, 9-4-4.5-1 *et seq.* (Burns Code Ed.), wherein any person who drives in Indiana is deemed to have given his implied consent to take a chemical test, when asked to do so by a police officer having probable cause to suspect that that person is driving under the influence of alcohol, to determine whether that person is legally intoxicated.

## DISCUSSION AND DECISION

Issue One

Davis contends that the police officer did not have probable cause to stop his automobile. Davis asserts that a driver may drive slowly, straddle lane markers, and sit through a green light at an intersection for entirely innocent reasons, and that such activities do not raise suspicions strong enough to give rise to the inference that the driver is intoxicated.

We agree that an isolated incident of slow driving, temporary lane straddling, or even sitting through a green light without moving may merely show that the driver was inattentive or was engaged in some other innocent activity. However, where, as in the case at bar, such odd driving behavior occurs within a relatively short distance and period of time, a police officer would have probable cause[3] to suspect that driver is intoxicated. In light of the evidence presented, we cannot say, as a matter of law, that the officer did not have probable cause to stop Davis.

After the initial stop, the police officer's suspicions were reenforced by Davis' lack of physical mobility and dexterity and by Davis' hostile and obnoxious behavior.

Issue Two

Davis contends that in light of the police officer's refusal to allow Davis to consult with his attorney prior to the time when Davis was to have taken the breathalyzer test, Davis' refusal to take the test could not be considered "knowing and wilful." We disagree.

Davis bases his argument upon the idea that his right to counsel, pursuant to U.S. CONSt., amend. VI, was denied. However, Davis overlooks the fact that his 6th amendment right to counsel did not attach until a judicial adversary proceeding had been initiated against him, that is, after the filing of an

---

3. See IC 1971, 9-4-4.5-4 (Burns Supp. 1976).

affidavit or indictment charging him with a crime.[4] At the time of Davis' refusal to take the breath test no judicial adversary proceeding had been initiated; therefore, he had no 6th amendment right to consult an attorney at that time.

This case is one of first impression in Indiana. However most courts in the United States agree that a person, who has been asked by a police officer to take a required chemical test to determine if and to what extent the person is intoxicated, has no constitutional right to consult with counsel prior to or during the taking of such test.[5] In *Swenumson v. Iowa Department of Public Safety* (1973), 210 N.W.2d 660, the Iowa Supreme Court stated the following:

"I. *The qualified response. It is well established that the state and federal constitutional right to counsel does not apply to an implied consent proceeding.* Gottschalk v. Sueppel, 258 Iowa 1173, 1179, 140 N.W.2d 866, 869 (1966) ('Neither provision is applicable to this administrative proceeding * * *.'). Because such right does not exist in this kind of proceeding, *it has been generally held either an affirmative or negative response to a request for chemical test which is conditioned on obtaining the advice of counsel amounts to a refusal to take the test.* See Rust v. Department of Motor Vehicles, Div. of Driver's Lic., 267 Cal.App.2d 545, 73 Cal. Reptr. 366, 367 (1968) ('A suspected drunk driver has refused to take the blood alcohol test when he conditioned his consent on having counsel present; he is not entitled to the advice of counsel in connection with the test * * *.'); Mills v. Bridges, 93 Idaho 679, 471 P.2d 66 (1970); State v. Palmer, 291 Minn. 302, 191 N.W.2d 188 (1971); Rusho v. Johns, 186 Neb. 131, 181 N.W.2d 448 (1970); State v. Pandoli, 109 N.J. Super. 1, 262 A.2d 41 (1970); Story v. Hults, 19 N.Y.2d 936, 281 N.Y.S.2d 342, 228 N.E.2d 398 (1967); Hunter v. State, 25 Ohio Misc. 117, 266 N.E.2d 599 (1970); Stratikos v. Department of Motor Vehicles, 4 Or.App. 313, 477 P.2d 237, 478 P.2d 654 (1970); Commonwealth v. Morris, 218 Pa.Super. 347, 280 A.2d 658 (1971); State v. Dellveneri, 128 Vt. 85, 258 A.2d 834 (1969); Deaner v. Commonwealth, 210 Va. 285, 170 S.E.2d 199 (1969).

Although courts in some jurisdictions equivocate as to propriety of delay in response to the request, we share the view

4. See *Winston v. State* (1975), 263 Ind. 8, 323 N.E.2d 228, and *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.

5. See Anno. 88 ALR 2d 1064 *et seq.*

expressed by the New Jersey court in People v. Pandloi, supra:

> 'Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that *anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so.* [citation] The occasion is not one for debate, maneuver or negotiation, but rather for a simple "yes" or "no" to the officer's request.' Id., 262 A.2d at 42." (Our emphasis)

In *Gottschalk v. Sueppel, supra,* the Iowa Supreme Court is representative of the courts which characterize a driver's license revocation proceeding as an administrative proceeding and not a criminal action, as can be seen from the following statement:

> " 'The same motor vehicle accident may give rise to two separate and distinct proceedings. One, a civil and administrative licensing procedure instituted by the Motor Vehicle Commissioner to determine whether a person's privilege to drive shall be revoked; the other, a criminal action, instituted by the People in the appropriate Court to determine whether a crime has been committed. Each proceed independently of the other, the outcome of one action is of no consequence in the other. (Finocchairo v. Kelly, 11 N.Y.2d 58, 226 N.Y.S.2d 403, 181 N.E.2d 427).' Bowers v. Hults, 42 Misc.2d 845, 249 N.Y.S.2d 361, 364. See Anno. 88 A.L.R.2d 1064, 1067."

In Anno. 88 ALR2d 1064 at 1067 it states:

> "A criminal trial on a charge of operating a motor vehicle while under the influence of alcohol is a distinct and separate proceeding from an administrative hearing to determine whether an operator's license should be revoked because of the holder's refusal to submit to a sobriety test, and hence the fact that the criminal trial resulted in an acquittal will not prevent a determination adverse to the license holder in the proceeding to revoke his license."

In the case at bar this court has before it only issues which pertain to the administrative proceedings which occurred in the trial court. Since the 6th amendment right to counsel attaches only in criminal prosecutions, there is no such right in an administrative action, as in the case at bar. Therefore, Davis had no right to

counsel prior to deciding whether or not to take the breathalyzer test.

Davis contends that, according to *Escobedo v. Illinois* (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, he had the right to the assistance of counsel prior to taking the breath test, because the breath test, like an interrogation, could have produced incriminating evidence, thereby, violating his right against self-incrimination, pursuant to U.S. CONST., amend. V. The California Court of Appeals addressed this problem in *Findley v. Orr* (1968), 262 CA2d 656, 69 Cal.Rptr. 137, in the following statement.

> "Appellant contends, as above stated, that his privilege against self-incrimination was violated, at the department hearing, by receiving evidence of his refusal to submit to a chemical test of his blood, breath, or urine. . . .
>
> * * *
>
> In Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, a report of the chemical analysis of a blood sample taken from the petitioner (driver) even though he refused to submit to the blood test was received in evidence in a criminal prosecution of petitioner for driving a vehicle while under the influence of intoxicating liquor (Cal.Veh.Code, §23102, subd. (a)). It was held therein that the admission of the report in evidence did not violate petitioner's privilege against self-incrimination.
>
> In Gilbert v. State of California, 388 U.S. 263, 266-267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178, it was held that the taking of exemplars of petitioner's handwriting did not violate his privilege against self-incrimination, and it was said: *'The privilege reaches only compulsion of an accused's communications * * *, and not compulsion which makes a suspect or accused the source of "real or physical evidence" * * *.* [citing Schmerber v. State of California, supra]. . . .
>
> In People v. Sudduth, 65 Cal.2d 543, 55 Cal. Rptr. 393, 421 P.2d 401, the defendant was found guilty of driving a vehicle while under the influence of intoxicating liquor (Veh. Code, §23102), and he contended on appeal that his privilege against self-incrimination was violated by the admission of evidence of hs refusal to take a breathalyzer test to determine the percentage of alcohol in his blood. The court rejected the contention

and held (p. 546, 55 Cal. Reptr. 393, 421 P.2d 401) that *suspects have no constitutional right to refuse a test designed to produce physical evidence in the form of a breath sample. . . .*

\* \* \*

In other states which have implied consent laws similar to section 13353 of the California Vehicle Code, it has been held, *in civil proceedings for suspension of a person's driving privilege, that admission of evidence of the person's refusal to take the required tests, does not violate his privilege against self-incrimination.* (See Blydenburg v. David, Mo., 413 S.W.2d 284; Lee v. State, 187 Kan. 566, 358 P.2d 765; Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75, 88 A.L.R.2d 1055.)"

(Our emphasis)

In summary we hold that the police officer had probable cause to stop Davis and to request Davis to take a chemical sobriety test. We also hold that because no criminal proceeding had been commenced at the time which Davis refused to take the breath test and because of the administrative nature of the proceeding, he had no 6th amendment right to consult with counsel in deciding whether to take the test, and that because the 5th amendment right against self-incrimination does not apply to the obtaining of non-communicative physical evidence, such rights were not violated in the case at bar.

Judgment affirmed.

Robertson, C.J. and Lybrook, J. concur.

NOTE — Reported at 367 N.E.2d 1163.