Charlie **STEWARD,** Appellant (Defendant Below),

v.

**STATE of Indiana,** Appellee (Plaintiff Below).

No. 3–981A240.

Court of Appeals of Indiana, Third District.

June 24, 1982.

Rehearing Denied August 10, 1982.

---

**860**

Calvin K. Hubbell, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

This action consolidates appeals from an administrative hearing resulting in the suspension of the appellant's driver's license and a criminal trial at which appellant was found guilty of driving under the influence of intoxicants and unsafe lane movement. With respect to the suspension of his license, Steward alleges that he did not knowingly refuse to comply with Indiana's Implied Consent Law, IC 1971, 9–4–4.5–3 (Burns 1980 Repl.). Steward also challenges the sufficiency of the evidence supporting his conviction for driving under the influence of intoxicants and unsafe lane movement.

The facts taken in a light most favorable to the trial court are as follows:

On April 18, 1980 an Indiana State Trooper tracked Steward on radar traveling 63–64 miles per hour in an area of the Indiana Toll Road with a posted speed limit of 55 miles per hour. The State Trooper then followed Steward for approximately two miles. While the trooper was following Steward, he watched Steward's car cross the center line by approximately two feet and return to his lane three times. He also saw Steward drive off the edge of the lane onto the right side berm of the road. Steward was then pulled over.

When the trooper approached Steward he noticed that Steward's eyes were watery and bloodshot, and Steward smelled of alcohol. Steward gave the trooper his Illinois driver's license. The trooper then asked Steward to step to the rear of his vehicle. While attempting to walk to the rear of his car, Steward had to place his hand on the car to maintain his balance. At the rear of the vehicle Steward had trouble maintaining his balance and was swaying as he stood.

At this point the trooper read Steward Indiana's Implied Consent Warning from a card he carried. Steward asked the trooper to give him a break, at which time the trooper advised him he must answer yes or no to taking a breathalizer test and again read him the Implied Consent Warning. After being read the warning the second time, Steward agreed to take the test. Steward was placed in the rear of the police car and taken to the Porter Maintenance Building about six miles away.

Upon arriving at the Porter Maintenance Building the trooper set up the breathalizer machine and began to fill out the necessary paperwork while the machine warmed up. While filling out these forms the trooper asked Steward if the address on his driver's license was correct. Steward replied that he was not answering any questions or taking any tests until he spoke with a lawyer. The trooper denied Steward's request to be allowed to make a phone call although there was a phone in the maintenance building. At this time the trooper again read Steward the Implied Consent Warning, but Steward refused to take the test before speaking with an attorney. Steward was then placed under arrest and read his Miranda rights.

Subsequently at a civil hearing on March 10, 1981, Steward's license was suspended for his failure to comply with Indiana's Implied Consent Law. On June 9, 1981 Steward was tried and found guilty of driving under the influence of intoxicants and unsafe lane movement. Steward now comes before the Court to appeal both the civil and criminal actions taken against him.

Steward raises the following issues on appeal:

(1) whether the defendant knowingly refused to submit to a breathalizer test pursuant to the Indiana Implied Consent Law;

(2) whether there was sufficient evidence introduced at trial to support the defendant's conviction for driving under the influence of intoxicants; and

(3) whether there was sufficient evidence introduced at trial to support the defendant's conviction for unsafe lane movement.

The first issue raised by Steward really contains two separate contentions. First, Steward alleges that his request to speak with an attorney prior to the test was not a knowing refusal but merely a valid exercise of his constitutional rights under the Sixth and Fourteenth Amendments. Second, Steward alleges that he was confused about his rights because he was an out-of-state citizen and therefore did not knowingly refuse to submit to the test.

■ Steward alleges that he was deprived of his right to counsel while determining whether to take the breathalizer test pursuant to the Indiana Implied Consent Statute, IC 1971, 9–4–4.5–3. The rule set out by the United States Supreme Court and followed by Indiana courts established that the Sixth and Fourteenth Amendments' right to counsel does not attach until judicial adversarial proceedings have begun, i.e., arrest, filing of an affidavit or indictment.

*Kirby v. Illinois* (1972) 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411;

*Winston v. State* (1975), 263 Ind. 8, 323 N.E.2d 228.

Pursuant to IC 1971, 9–4–4.5–3 judicial proceedings are not initiated until the suspect is arrested for refusal to take the test or after the test indicates the subject has a blood alcohol level above the statutory limit. IC 1971, 9–4–4.5–3 in relevant part states:

"(a) Any law enforcement officer authorized to enforce the laws of this state . . . under IC 9–4–1–54, . . . *shall not place such person under arrest for such offense until he has first offered to such person the opportunity to submit to a chemical test . . . .*

(1) If such chemical test results in prima facie evidence that such person is not intoxicated, *he shall not be arrested* and charged with such offense and he shall be released immediately.

\*　　\*　　\*　　\*　　\*　　\*

(3) If such chemical test results in prima facie evidence that such person is

intoxicated, *he shall be arrested and charged with such offense.*"

According to *Kirby* and *Winston, supra,* Steward had no right to counsel at the time he requested it because he had not been arrested at that time pursuant to IC 1971, 9–4–4.5–3(a), hence he had no Sixth or Fourteenth Amendment right to counsel at that point in time.

■ It has also been established that persons have no Sixth or Fourteenth Amendment right to counsel arising out of purely civil matters. *Davis v. State* (1977), Ind. App., 367 N.E.2d 1163. Pursuant to IC 1971, 9–4–4.5–4, failure to comply with Indiana's Implied Consent Law results in a civil hearing at which a person's license may be suspended. Therefore, in the case at bar Steward had no right to counsel and denial of his request to speak with an attorney does not vitiate his knowing refusal to submit to a breathalizer test.[1] *Davis, supra.*

■ Steward also alleges that he was confused about his rights under the Implied Consent Law because he is an Illinois citizen and contends that he therefore did not knowingly refuse to take the breath test. Since a hearing to suspend the driving privileges of a person for refusal to submit to a chemical test is civil in nature, knowing refusal to take such a test need not be established beyond a reasonable doubt. *Hatch v. State* (1978), Ind.App., 378 N.E.2d 949. Furthermore, when reviewing a trial court's decision this Court looks at the evidence in a light most favorable to the trial court to determine whether there is ample evidence to support the determination of the trial court. This Court will not reweigh the evidence nor will it rejudge the credibility of witnesses when reviewing the decision of a trial court. *Jaremczuk v. State* (1978), Ind.App., 380 N.E.2d 615.

■ In the case at bar the State Trooper read Steward the Implied Consent Warning not once but three times. By his own admission Steward understood the warning and appreciated the consequences of his refusal to comply. Therefore we find that there was ample evidence to support the trial court's determination that Steward knowingly refused to take a breathalizer test pursuant to IC 1971, 9–4–4.5–3. *Bowlin v. State* (1975), 164 Ind.App. 693, 330 N.E.2d 353.

■ Steward alleges that there was insufficient evidence introduced at trial to support his conviction for driving under the influence of intoxicants.

As stated *supra,* upon review of a trial court's decision this Court does not reweigh the evidence nor rejudge the credibility of witnesses, but looks at the facts in a light most favorable to the decision of the trial court when determining whether that decision is supported by ample evidence. *Jaremczuk, supra.*

Some courts have held that the mere fact that the defendant had bloodshot, watery eyes and smelled of alcohol is insufficient evidence to support a conviction for driving under the influence of intoxicants pursuant to IC 1971, 9–4–1–54.

*Hicks v. State* (1926), 197 Ind. 294, 150 N.E. 759;

*Hartman v. State* (1980), Ind.App., 401 N.E.2d 723.

In the case at bar there is substantially more evidence than mere bloodshot, watery eyes and alcohol smell. Steward also had trouble walking to the rear of his car and swayed as he stood there. Before being pulled over Steward drove in an erratic manner crossing the center line three times and driving onto the right side berm once. Therefore, we find that there is ample evidence in support of the trial court's determination that Steward was guilty of driving under the influence of intoxicants in violation of IC 1971, 9–4–1–54.

*Anderson v. State* (1959), 239 Ind. 597, 159 N.E.2d 287;

*Robertson v. State* (1973), 155 Ind.App. 114, 291 N.E.2d 708.

1. The Court believes that in this type of situation where a telephone is readily accessible and a call to an attorney would not delay the test procedure the subject should be allowed to speak with his attorney as a matter of courtesy but not as a matter of right.

Steward alleges that there was insufficient evidence introduced at trial to support his conviction for unsafe lane movement pursuant to IC 1971, 9–4–1–78. Steward contends that his actions while driving do not fall within the proscription of IC 1971, 9–4–1–78 because there is no indication that his erratic driving would affect any pedestrians or other vehicles. IC 1971, 9–4–1–78 in relevant part states:

"(a) No person shall slow down or stop a vehicle, turn a vehicle from a direct course upon a highway or change from one [1] traffic lane to another *unless and until such movement can be made with reasonable safety*, and then only after giving a clearly audible signal by sounding the horn *if* any pedestrian may be affected by such movement, or after giving an appropriate stop or turn signal ... *in the event* any other vehicle may be affected by such movement." (Emphasis added.)

Steward rests his argument on the latter half of IC 1971, 9–4–1–78(a) which prohibits certain lane movement which may affect pedestrians or other vehicles. However, in placing his emphasis on this part of IC 1971, 9–4–1–78(a), Steward emphasizes the fact that this prohibition of lane movement stems from condition precedents of either a pedestrian or other vehicle which may be affected. As Steward correctly states there were no such pedestrians or vehicles in the area at the time in question. However, that does not save Steward. In placing such great reliance on the latter half of IC 1971, 9–4–1–78(a), Steward ignores the preceding half of the statute which clearly proscribes any lane movement until it can be done with reasonable safety regardless of the presence of pedestrians or other vehicles.

It must be stated that when reviewing the determination of a trial court this Court looks at the evidence in a light most favorable to the findings of the trial court in deciding whether such findings are supported by sufficient evidence. *Jaremczuk, supra.* In the case at bar Steward drove in an erratic manner crossing the center line three times and driving onto the right side berm once within a two-mile distance. Steward was also driving faster than the speed limit and when stopped appeared to be intoxicated. We find that there is ample evidence in support of a finding that Steward engaged in lane movement which could not be done with reasonable safety because of the surrounding circumstances and thereby violated IC 1971, 9–4–1–78.

For the above reasons the findings of the trial court suspending Steward's license and finding him guilty of unsafe lane movement and driving under the influence of intoxicants are affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, J., concurs in part and dissents in part with opinion.

GARRARD, Judge, concurring in part and dissenting in part.

I concur with the majority's affirmance of the suspension of Steward's driving privilege and his conviction for driving under the influence.

I dissent, however, to affirming the conviction for unsafe lane movement (IC 9–4–1–78). Accepting the majority analysis that the statute has a double thrust, there was simply no evidence adduced at trial that Steward's movements into the adjacent lane in fact constituted a threat to the safety of himself or anyone else. There was no evidence offered of any danger created either to Steward or anyone else. The fact that he may have had no sober reason to change lanes does not *ipso facto* mean the changes violated the "reasonable safety" mandate which is the essence of the statutory prohibition.

I would therefore vacate the conviction for unsafe lane movement.