**Virginia Carol SIMS and Penny E. O'Neill, as Trustees under the Home Connection Realty Trust, dated September 18, 2001, Appellant–Plaintiff,**

v.

**THE TOWN OF NEW CHICAGO, Appellee–Defendant.**

No. 45A03–0506–CV–283.

Court of Appeals of Indiana.

Feb. 17, 2006.

---

Thomas K. Parry, Crown Point, for Appellant.

John P. Shanahan, Rhame & Elwood, Portage, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Virginia Carol Sims and Penny E. O'Neill, as Trustees under The Home Con-nection Realty Trust ("Realty Trust"), appeal the trial court's order that granted summary judgment to Town of New Chicago, Indiana ("New Chicago") on Realty Trust's action for declaratory relief on its claim to a prescriptive easement.

We affirm.

### ISSUE

Whether the trial court erred in granting New Chicago's motion for summary judgment.

### FACTS

On October 28, 2004, Realty Trust filed a complaint for declaratory relief, seeking to quiet title and injunctive relief, against New Chicago, which is a municipal subdivision. According to the complaint, Realty Trust owned a parcel of real estate—Lot 18 in Block 3, 4th addition to the Town of New Chicago, commonly known as 3321 Michigan Street. The parcel is at the northeast corner of Michigan Street and Lincoln Avenue. The building on Realty Trust's lot is situated very close to the border of its southern property line. Parallel to this property line is the Lincoln Avenue right of way, owned by New Chicago. The Land Surveying Diagrams, attached to Realty Trust's complaint, show that the Lincoln Avenue right-of-way is sixty-six feet wide; the central paved street is twenty-three feet wide; and the northern part of the right-of-way is twenty feet—between the Realty Trust's building and the pavement of Lincoln Avenue—is covered with asphalt.[1]

---

1. Realty Trust does not challenge the statement by New Chicago that Lincoln Avenue is "a publicly dedicated and improved street consisting of sixty-six (66) feet of right-of-way owned by the Town of New Chicago." New Chicago's Br. at 2. We presume that the des-ignated evidence provided by New Chicago to the trial court supported this factual assertion.

We note that the Appendix filed by Realty Trust included only its complaint, its motion for summary judgment, and its memorandum

According to the complaint, New Chicago had recently placed some guardrails parallel to Realty Trust's building and Lincoln Avenue. The photograph submitted with Realty Trust's complaint portrays guardrails that are located about a sidewalk-width away from the building.[2] Realty Trust's complaint asserted that it "and it's [sic] predecessors in interest" had "for well over 20 years . . . enjoyed continuous and uninterrupted use" of the paved twenty feet that lay between its building and Lincoln Avenue for the purpose of parking, which was "open, notorious and hostile to the interests of" New Chicago, whereby it had established a "Prescriptive Parking Easement" on that paved twenty-foot strip. (App.27). Realty Trust further asserted that New Chicago was "currently encroaching" on its prescriptive easement, and asked that the trial court "quiet title with regard to" Realty Trust's "Prescriptive Parking Easement," authorize Realty Trust to "remove the barricades recently erected," and enjoin New Chicago "from any further interfering with [Realty Trust]'s Prescriptive Parking Easement." (App.27, 28).

On January 6, 2005, Realty Trust filed a motion for summary judgment. The motion was accompanied by an affidavit stating that since the 1950s, the area between the edge of the pavement and the southern wall of the building had been "used as private parking for the businesses located at 3321 Michigan Street," and that there had never been "a public sidewalk" alongside that building. (App.45). Realty Trust argued that it had established a prescriptive easement as a matter of law. New Chicago also filed a motion for summary judgment, but a copy of its motion was not in the record presented to this court on appeal.

On May 27, 2005, the trial court issued its order finding "no genuine issue of material fact in regard to prescriptive easements" and citing our Supreme Court's statement in *Verrill v. School City of Hobart*, 222 Ind. 214, 52 N.E.2d 619 (1944), declaring that in the "absence of a statute" so providing, "an easement cannot be acquired by prescription against the government." (App.11). Noting that Realty Trust had provided no authority controverting the proposition of law established by *Verrill*, the trial court granted New Chicago's motion for summary judgment and ordered "judgment against" New Realty on its complaint. (App.11, 12).

## DECISION

Upon a challenge to the decision by the trial court to grant summary judgment,

---

in opposition to New Chicago's motion for summary judgment. Realty Trust did not include New Chicago's motion for summary judgment (for which the designated evidence submitted, according to the CCS, included two affidavits) or New Chicago's memorandum in opposition to Realty Trust's motion for summary judgment and in support of New Chicago's motion for summary judgment.

Because Realty Trust failed to include evidence designated and submitted by New Chicago to the trial court, it risked our not considering its appellate arguments on the merits. *See Yoquelet v. Marshall County*, 811 N.E.2d 826 (Ind.Ct.App.2004) (holding that when appellant failed to provide evidence "specifically designated to the trial court for purposes of the motion for summary judgment," appellant "failed to prove that the trial court erred," so as to overcome presumption of validity of trial court's order).

2. According to New Chicago, the guardrail "create[d] an area for pedestrian traffic between the building and the vehicles parked" on the asphalt between the guardrail and Lincoln Avenue. New Chicago's Br. at 3. Realty Trust does not challenge this statement, and New Chicago's characterization is consistent with the photograph submitted with Realty Trust's complaint.

our standard of review [3] "is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Corr v. American Family Ins.*, 767 N.E.2d 535, 537 (Ind.2002). On appeal, the trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of proving that the trial court erred in its determination that there are no genuine issues of fact and that the moving party is entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993).

In *Verrill*, Mr. Verrill owned real estate adjacent to that owned by the "School City of Hobart." 52 N.E.2d at 620. His complaint alleged that he and his predecessors in title had "for more than twenty years . . . an easement or right of way" which they used "as a passageway or driveway" across the neighboring school property. 52 N.E.2d at 620. When the School City "excavat[ed] a deep cut" that prevented his using what he claimed as an easement, he filed an action seeking "his right to a way be declared" and that the School City "be perpetually enjoined from interfering with his use of the way." *Id.* Our Supreme Court noted that because the School City was "part of the educational system of the state" and an "agenc[y] of the state," its property was "governmental property." *Id.* It then held, "In the absence of a statute, and we find no statute here, an easement cannot be acquired by prescription against the government." *Id.*

■ Realty Trust's first argument begins by referring us to the 1931 enactment of a statute that allowed for adverse possession of land formerly held by the State of Indiana. *See* 1931 Ind. Acts 563 (later codified in 1971 at Ind.Code § 32–1–19–1). Subsequently, Realty Trust reminds us, in 1985 the legislature amended our code concerning real property to provide that "title to real property owned by the state may not be alienated by adverse possession." *See* P.L. 289–1985, codified at I.C. § 32–1–20–2. Because this statute only barred adverse possession of property owned by the State of Indiana, Realty Trust argues, it implicitly allowed adverse possession of property owned by other governmental entities. This construction is supported, Realty Trust argues, by the fact that in 1998 the legislature further amended the statute to add a bar to adverse possession of real property owned by "a political subdivision." I.C. § 32–21–7–2 (language enacted by P.L. 86–1998, § 2). Based upon this legislative history, Realty Trust argues that between 1985 and 1998, the statute allowed adverse possession of real property owned by governmental entities other than the State. Further, Realty Trust asserts that the prescriptive easement is a "similar" concept to adverse possession; the foregoing legislative history shows the adverse possession statute was "obviously modified by both the original enactment and subsequent amendment"; and no statute expressly restricts prescriptive easement of property owned by either the State or its political subdivision of the adverse possession statute. Realty Trust's Br. at 21. Therefore, Realty Trust concludes that the trial court erred in relying on *Verrill.*

---

**3.** We remind counsel for Realty Trust that the appellant's brief *"must include* for each issue a concise statement of the applicable standard of review." Ind. Appellate Rule 46(A)(8)(b) (emphasis added). Although not expressly stated in the Rule, it contemplates the citation of authority as to this standard, not simply the appellant's opinion that the review "would be that of De Novo." Realty Trust's Br. at 15, 22, 25:

We commend Realty Trust for its creative argument. However, Realty Trust does not direct us to any statute or case law that allows for a prescriptive easement on property owned by a governmental entity. Long before *Verrill*, we had addressed a claim for a prescriptive easement of land held by a governmental entity for an embankment and highway. Harking back to the "maxim of the common law" that "no prescriptive right could be asserted against the king," we held that "[i]n this country," the maxim was that "[n]o prescriptive right can be obtained against the Government." *Randall v. Bd. of Comm'rs of Tippecanoe County*, 77 Ind. App. 320, 131 N.E. 776, 779 (1921), *trans. denied, appeal dismissed* 261 U.S. 252, 43 S.Ct. 252, 67 L.Ed. 637 (1923). Further, consistent with *Verrill*, the general rule is that prescriptive rights cannot be "acquired in property affected with a public interest or dedicated to a public use." 25 AM.JUR. 2D, *Easements and Licenses* § 42 (2004). Realty Trust's first argument fails to persuade us that the trial court erred in its conclusion that based on *Verrill*, New Chicago is entitled to judgment as a matter of law.

Realty Trust next reminds us that in 1985, the legislature enacted a statute that barred the previously allowed adverse possession of property owned by the State, and in 1998, it further barred adverse possession of property owned by a political subdivision. Therefore, as best we can understand it, Realty Trust's second argument is that the legislature's use of restrictive language in the 1985 action "opened the door" to acquisition of a prescriptive easement of property owned by the State, and the legislature's 1998 action suggests that before 1998, a prescriptive easement against a political subdivision could have been acquired. Because the 1985 act did not specifically provide that a prescriptive easement could be acquired on property owned by the State, nor did the 1998 act specifically provide that a prescriptive easement could be acquired on property owned by a political subdivision, Realty Trust's second argument fails to persuade us the that the trial court erred in finding that *Verrill* continues to be good law.

Finally, Realty Trust argues that because the statute contains some restrictions on alienation by adverse use, and there is no specific statutory bar to a prescriptive easement on land owned by a governmental entity, the trial court impermissibly "expand[ed] the prohibitions not otherwise specifically enumerated." Realty Trust's Br. at 25. We cannot agree. Since at least 1921, Indiana courts have held that a prescriptive easement cannot be acquired in land owned by a governmental entity. No legislative action has been taken to change this common law rule. "Absent express declaration or unmistakable implication, statutes will not be interpreted as changing the common law." *Drake v. Mitchell Community Schools*, 649 N.E.2d 1027, 1029–30 (Ind.1995). Realty Trust has failed to prove that the trial court erred, and the presumption of the validity of the summary judgment remains.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.