**Michael E. COHEE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 89A01–1009–CR–472.

Court of Appeals of Indiana.

March 24, 2011.

Terry O'Maley, Boston Bever Klinge Cross & Chidester, Richmond, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Michael E. Cohee brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence. Cohee raises a single issue for our review, which we restate as follows: whether he was entitled to be read his *Miranda* rights or to exercise his right to counsel before he submitted to a chemical test pursuant to Indiana Code Section 9–30–6–2(a). We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 10, 2010, Richmond Police Department Officer Ami Miller initiated a traffic stop of Cohee's vehicle due to a broken light over his license plate. Upon approaching Cohee, Officer Miller observed that Cohee's eyes were red, watery, and bloodshot, that his speech was slow and slurred, and that he had a strong odor of alcohol on his breath. Officer Miller asked Cohee if he had drunk much alcohol that night, and Cohee responded, "Not a lot. I'm good." Appellant's App. at 86. Officer Miller asked him to step out of the vehicle so that she could administer field sobriety tests.

Before exiting the vehicle, Cohee stated, "Let me get my registration." *Id.* Officer Miller told Cohee that "we [a]re pas[t] that" and reiterated her request for him to exit the vehicle. *Id.* But Cohee did not comply and began to start his car and roll up his window. Officer Miller told him not to start his car and to roll his window back down, but Cohee continued to roll up his window and then locked his car doors. Officer Miller thought Cohee was going to flee, pointed her taser at Cohee, and yelled at him to exit the vehicle. Cohee turned

his car off and "stumbled out of the vehicle." *Id.*

Officer Miller proceeded to perform multiple field sobriety tests, including the "walk and turn," the "one leg stand," and the horizontal gaze nystagmus test, all of which Cohee failed. *Id.* Officer Miller then informed Cohee that he was under arrest for public intoxication. Officer Miller asked Cohee to take a breath test, which he did and failed. Two other officers arrived, and the three officers alternatively read to Cohee Indiana's Implied Consent Law and asked if Cohee would expressly consent to a blood draw, but Cohee responded that he wanted a lawyer. The officers informed him that he was not yet entitled to legal counsel, that he needed to answer whether he would consent to a blood draw, and that if he did not consent his refusal would result in the loss of his license. Cohee eventually complied, and the blood test showed that he had a blood alcohol level of 0.236 percent.

On April 27, the State charged Cohee with operating while intoxicated, as a Class A misdemeanor, and operating while intoxicated, as a Class C misdemeanor. The State also alleged Cohee to be an habitual substance offender. On August 3, Cohee filed a motion to suppress the State's evidence against him. The parties stipulated to the facts. On August 25, the trial court entered a detailed order denying Cohee's motion. The court then certified its order for interlocutory appeal, which we accepted.

### DISCUSSION AND DECISION

■ Cohee appeals the trial court's denial of his motion to suppress the evidence. We review de novo a trial court's ruling on the constitutionality of a search or seizure. *Campos v. State,* 885 N.E.2d 590, 595 (Ind.2008). However, when reviewing a trial court's ruling on a motion to

suppress evidence, we must determine whether substantial evidence of probative value supports the trial court's decision. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

■ Cohee's argument on appeal is that, once Officer Miller told him that he was "under arrest," Officer Miller was required to advise him of his rights under the Fifth Amendment to the U.S. Constitution and Article I, Section 13 of the Indiana Constitution before Officer Miller could ask him to consent to a blood test under Indiana Code Section 9–30–6–2(a). Appellant's Br. at 8. In other words, Cohee argues that he was entitled to be read his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (Ind.1975), in order to avoid the potential of self-incrimination. It is undisputed that Officer Miller did not read Cohee any of those rights after she informed him that he was under arrest.[1]

Cohee's federal argument is premised on his assumption that the chemical test sample he provided was self-incriminating evidence protected under the Fifth Amendment. It has long been the law that that is not the case. In 1966, the Supreme Court of the United States considered an identical claim from a defendant in a driving-under-the-influence prosecution. The Court rejected his claim and expressly held that

the privilege [against self-incrimination] protects an accused only from being compelled to testify against himself, or otherwise provide the State with evi-

dence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.

*Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Court went on to discuss the relationship of such claims to its prior holding in *Miranda:*

If the scope of the privilege coincided with the complex of values it helps to protect, we might be obliged to conclude that the privilege was violated. In *Miranda v. Arizona*, 384 U.S. 436, at 460 [86 S.Ct. 1602], the Court said of the interests protected by the privilege: "All these policies point to one overriding thought: the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. To maintain a 'fair state-individual balance,' to require the government 'to shoulder the entire load,' * * * to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth." The withdrawal of blood necessarily involves puncturing the skin for extraction, and the percent by weight of alcohol in that blood, as established by chemical analysis, is evidence of criminal guilt. Compelled submission fails on one view to respect the "inviolability of the human personality." Moreover, since it enables the

---

1. It is also undisputed that, at the time of his arrest, Officer Miller had probable cause to believe that Cohee had operated a vehicle while intoxicated. *See* Ind.Code § 9–30–6–2(a) ("A law enforcement officer who has

probable cause to believe that a person has committed [operating a vehicle while intoxicated] shall offer the person the opportunity to submit to a chemical test [such as a blood test].").

State to rely on evidence forced from the accused, the compulsion violates at least one meaning of the requirement that the State procure the evidence against an accused "by its own independent labors."

As the passage in *Miranda* implicitly recognizes, however, the privilege has never been given the full scope which the values it helps to protect suggest. History and a long line of authorities in lower courts have consistently limited its protection to situations in which the State seeks to submerge those values by obtaining the evidence against an accused through "the cruel, simple expedient of compelling it from his own mouth. * * * In sum, the privilege is fulfilled only when the person is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will." *Ibid.* The leading case in this Court is *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 [ (1910) ]. There the question was whether evidence was admissible that the accused, prior to trial and over his protest, put on a blouse that fitted him. It was contended that compelling the accused to submit to the demand that he model the blouse violated the privilege. Mr. Justice Holmes, speaking for the Court, rejected the argument as "based upon an extravagant extension of the 5th Amendment," and went on to say: "(T)he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof." 218 U.S. at 252–253 [31 S.Ct. 2].

It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 [ (1886) ]. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it.

\* \* \*

In the present case, however, no such problem of application is presented. Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone. Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds.

*Id.* at 762–65, 86 S.Ct. 1826 (footnotes omitted).

Likewise, this court has long recognized that, "because the 5th [A]mendment right

against self-incrimination does not apply to the obtaining of noncommunicative physical evidence," such rights cannot be violated when the State acquires a chemical breath test from a suspect without first giving that suspect the assistance of counsel. *Davis v. State,* 174 Ind.App. 433, 367 N.E.2d 1163, 1166–67 (1977).

Remarkably, neither party on appeal discusses *Schmerber* or *Davis.*[2] Instead, Cohee analyzes whether his blood draw was the result of a custodial interrogation—and therefore subject to the restrictions of *Miranda*—while the State analogizes the facts of Cohee's case to a variety of our opinions considering the application of *Miranda* to field sobriety tests ("FSTs"). *See, e.g., State v. Necessary,* 800 N.E.2d 667, 670 (Ind.Ct.App.2003) (holding that "none of the *Miranda* warnings must be given to a defendant before the police administer FSTs"). We think the parties' arguments are beside the point. The protections of *Miranda* are aimed at preventing self-incrimination through verbal or written communication. Because the evidence at issue here is not self-incriminatory, *Miranda* does not apply. *Schmerber,* 384 U.S. at 761–65, 86 S.Ct. 1826; *Davis,* 367 N.E.2d at 1166–67.

Nonetheless, the language of *Miranda* does confirm our conclusion. In terms of "custodial interrogations," to which *Miranda* applies, Cohee, although plainly in police custody, was not subject to an interrogation when the officers asked for his consent to a blood draw. "Under *Miranda,* 'interrogation' includes express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *White v. State,* 772 N.E.2d 408, 412 (Ind.2002). Again, the blood draw evidence is not a self-incriminating communication, so Cohee could not incriminate himself when he consented to the blood draw. *See Schmerber,* 384 U.S. at 761–65, 86 S.Ct. 1826; *Davis,* 367 N.E.2d at 1166–67. And if Cohee had refused the blood draw (either expressly or by silence), that communication would not have been self-incriminating either. Rather, as the Indiana Supreme Court has held, a suspect's refusal is not necessarily evidence of intoxication but may be "merely that [he] refused to take the test[, which] is for the lawyers to argue and the jury to decide." *Ham v. State,* 826 N.E.2d 640, 642 (Ind.2005).

■ Similarly, Cohee may not avail himself of his right to counsel under the Indiana Constitution.[3] In *Pirtle,* our Supreme Court held that, under Article I, Section 13 of our Constitution, "[a]n accused is entitled to consult with counsel while in police custody." 323 N.E.2d at 639. But it is well established that that right does not apply here: "a person who drives on Indiana's roads has no right to consult with an attorney prior to deciding whether or not to submit to a chemical test administered under the Implied Consent

---

**2.** It is also remarkable that neither party discusses *Pirtle,* even though Cohee is clearly invoking that case in support of his Indiana claims and the trial court specifically considered it in rejecting his motion to suppress the evidence.

**3.** In response to Cohee's claim under the Indiana Constitution, the State asserts only that Cohee waived this claim for failing to develop an argument that is independent of his federal claim. We do not disagree with the State's sentiment that Cohee's argument on appeal could be better developed. But, as a matter of best practice, the State should not assume that this court will hold that a defendant waived a potential substantive argument. Cohee unambiguously raised a claim under Article I, Section 13 of the Indiana Constitution, and the State should have provided some cogent analysis on the merits of that argument.

law, and the lack of such consultation does not affect the person's refusal of the offered test." *Dalton v. State,* 773 N.E.2d 332, 335 (Ind.Ct.App.2002), *trans. denied; see also Schmidt v. State,* 816 N.E.2d 925, 943–44 (Ind.Ct.App.2004) ("the purpose of the *Pirtle* doctrine would not be served by extending that doctrine to apply to chemical breath testing."), *trans. denied.* Cohee does not suggest that this established rationale is incorrect or ought to be reconsidered, and we would decline such an invitation anyway.

In sum, Cohee's assertions that he was entitled to his rights under either *Miranda* or *Pirtle* fail as a matter of law. Thus, the trial court properly denied his motion to suppress the evidence against him, and we affirm the court's judgment.

Affirmed.

DARDEN, J., and BAILEY, J., concur.