**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JANE H. CONLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GERAMY RIDLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1202-CR-89 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven Eichholtz, Judge
The Honorable Michael Jensen, Magistrate
Cause No. 49G20-1101-FB-2983

**September 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Geramy Ridley appeals his conviction and sentence for unlawful possession of a firearm by a serious violent felon as a class B felony.[1] Ridley raises two issues which we revise and restate as:

I.      Whether the trial court's admission of the gun into evidence constituted fundamental error; and

II.     Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. On January 13, 2011, Indianapolis Metropolitan Police Officer Kerry Morse observed a vehicle travelling on Emerson make a right turn onto 12th Street without signaling and stopped the vehicle. As Officer Morse approached the driver's side of the vehicle he smelled the odor of burnt marijuana emanating from the window. Officer Morse requested identification from the three occupants of the vehicle, noted the smell of marijuana, and asked if any of the occupants had any marijuana or weapons. The three occupants initially denied possessing marijuana or weapons and subsequently admitted that marijuana had been smoked in the vehicle earlier in the day. Officer Morse called for backup due to the occupants continuing to move around and their refusal to obey his orders to show their hands.

Indianapolis Metropolitan Police Officer Michael Mann responded to the request for backup and approached the vehicle on the passenger side. Officer Mann observed Ridley in the front passenger seat and noticed what he believed to be marijuana on his lap, and he removed the substance from Ridley's lap and placed it on the dashboard.

---

[1] Ind. Code § 35-47-4-5 (Supp. 2006) (subsequently amended by Pub. L. No. 126-2012, § 58 (eff. July 1, 2012)).

2

Officer Mann then removed Ridley from the vehicle and placed him in custody. Officer Mann asked Ridley if "he had anything else on his person" and Ridley replied that he had a gun in his left jacket pocket. Transcript at 58. Officer Mann secured the gun from Ridley's pocket. Officer Mann then advised Ridley of his <u>Miranda</u> rights and asked him if he had a permit for the gun, and Ridley indicated that he did not have a permit. Ridley also indicated that the gun and the marijuana were his and apologized for carrying the gun. Additional marijuana was recovered from Ridley's person by the jail wagon driver.

On January 18, 2011, the State charged Ridley with Count I, unlawful possession of a firearm by a serious violent felon; Count II, possession of marijuana as a class A misdemeanor; and Count III, carrying a handgun without a license as a class A misdemeanor. On March 31, 2011, Ridley filed a motion to suppress evidence obtained as a result of an improper detention and search which the court denied on June 3, 2011. On September 14, 2011, Ridley filed a petition to certify the court's suppression order for interlocutory appeal and to stay proceedings pending the outcome which the court denied the following day.

Ridley waived his right to trial by jury, and on December 12, 2011, Ridley filed a motion to allow him to participate at trial as co-counsel. The court denied Ridley's motion in open court, and following that denial and after being "[a]dvised of [the] pitfalls," he decided to proceed *pro se*. At trial, when the marijuana and the gun were offered into evidence, Ridley did not object to their admission. Also, the State admitted evidence demonstrating that Ridley had previously been convicted of robbery as a class B felony. The court found Ridley guilty of Count I, unlawful possession of a firearm by a

3

serious violent felon, and Count III, carrying a handgun without a license as a class A misdemeanor but declined to enter judgment on that count, and found Ridley not guilty on Count II.[2] On January 31, 2012, the court identified Ridley's history of juvenile and criminal activity as an aggravator, did not identify any mitigators, and it sentenced Ridley to the advisory term of ten years in the Department of Correction.

I.

The first issue is whether the trial court's admission of the gun into evidence constituted fundamental error. Specifically, Ridley argues that the admission of the gun violated his rights under the Fifth Amendment of the United States Constitution as well as Article 1, § 11 of the Indiana Constitution.

We review the trial court's ruling on the admission of evidence for an abuse of discretion. Noojin v. State, 730 N.E.2d 672, 676 (Ind. 2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

However, as Ridley recognizes, he did not object to the admission of the gun at trial. To avoid waiver, Ridley attempts to invoke the fundamental error doctrine, which permits appellate review of otherwise procedurally defaulted claims. See Southward v.

---

[2] The court noted in rendering its judgment that "I guess we all get pretty causal [sic] about what is or is not marijuana. The State has chosen not to present a chemist in this matter on the misdemeanor charge. I don't doubt that what we have is marijuana but I don't think they met the burden of proof . . . ." Transcript at 79.

State, 957 N.E.2d 975, 977 (Ind. Ct. App. 2011). "The fundamental error doctrine is 'extremely narrow,' requiring an error 'so prejudicial that a fair trial is impossible.'" Id. (quoting Sasser v. State, 945 N.E.2d 201, 203 (Ind. Ct. App. 2011), trans. denied). "Blatant violations of basic principles, coupled with substantial potential or actual harm and denial of due process constitute fundamental error." Id.; see also Benson v. State, 762 N.E.2d 748, 755 (Ind. 2002) ("To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. To be fundamental error, an error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.").

Ridley spends the majority of his argument on this issue addressing the merits of the court's decision to admit the gun. Indeed, to the extent that he invokes fundamental error, his argument is as follows:

### 4. Fundamental error

> Ridley did not object to the introduction of the gun at trial. The error in admitting it, however, robbed him of basic constitutional protections, as argued above, and cannot be deemed "harmless" because without the gun, the charge of possession fails. It was fundamental error, and requires reversal.

Appellant's Brief at 10.

Thus, Ridley appears to equate fundamental error with harmless error. As the State notes in its brief, "harmless error and fundamental error are not the same." Appellee's Brief at 5 (citing Orr v. State, 968 N.E.2d 858, 861-862 (Ind. Ct. App. 2012) (noting that fundamental error "applies only to 'egregious circumstances,' and must

5

either 'make a fair trial impossible' or constitute clearly blatant violations of basic and elementary principles of due process,'" and holding that "[a]nything less than fundamental error is, in this case, harmless error and not grounds for reversal")); see also Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) ("We do not consider that admission of unlawfully seized evidence ipso facto requires reversal."), reh'g denied; Wilson v. State, 514 N.E.2d 282, 284 (Ind. 1987) ("Merely because the error relates to a violation of a constitutional right does not, in and of itself, render it fundamental error requiring this Court to consider the matter absent an objection at trial."); Owens v. State, 937 N.E.2d 880, 885 (Ind. Ct. App. 2010) ("The mere fact that error occurred and that it was prejudicial will not suffice. That, after all, is the ordinary rule for reversal on appeal when the contemporaneous objection has been made. Rather the error must be one such that the defendant could not possibly have had a fair trial or such that this court is left with the conviction that the verdict or sentence is clearly wrong or of such dubious validity that justice cannot permit it to stand.") (quoting Stewart v. State, 567 N.E.2d 171, 174 (Ind. Ct. App. 1991), trans. denied), reh'g denied, trans. denied. Accordingly, Ridley does not present cogent argument regarding whether the court's admission of the gun into evidence constituted fundamental error, and thus he has waived this issue for review. See Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument); see also generally Ind. Appellate Rule 46(A)(8)(a) (providing that an appellant's brief "must

6

contain the contentions of the appellant on the issues presented, supported by cogent reasoning").

However, even if Ridley had objected at trial and preserved this issue for review, we find that his arguments on appeal would fail. Regarding the Federal Constitution, Ridley challenges the gun's admission under the Fifth Amendment as a violation of his Miranda rights. Ridley argues that Officer Mann's question "whether [Ridley] had 'anything else' on his person[] was asked after [he] was 'secured into police custody' and before the Miranda warning." Appellant's Brief at 6. As the State notes, though, "[s]uch an analysis conflates the protections afforded a person under the Fifth Amendment with the protections afforded a person under the Fourth Amendment," because "[t]he Fifth Amendment privilege against self-incrimination solely involves evidence of a testimonial or communicative nature; it does not encompass physical evidence." Appellee's Brief at 7-8 (citing Cohee v. State, 945 N.E.2d 748, 750-752 (Ind. Ct. App. 2011) ("the privilege [against self-incrimination] protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . .") (quoting Schmerber v. California, 384 U.S. 757, 761, 86 S. Ct. 1826 (1966)), reh'g denied, trans. denied). Also, as the State correctly notes, Ridley does not challenge the fact that, at the time Officer Mann asked him the question about weapons he was in custody due to the presence of what Officer Mann observed to be marijuana in his lap, that he would accordingly be searched incident to that arrest, and that "even if a Fifth Amendment *Miranda* violation had any relevance here, the inevitable discovery exception to the exclusionary rule would have permitted the introduction of the

7

handgun because that doctrine permits the introduction of evidence that would have been located had there been no error." Id. at 9 (citing Banks v. State, 681 N.E.2d 235, 240 (Ind. Ct. App. 1997) ("[T]he inevitable discovery exception to the rule permits the introduction of evidence that eventually would have been located had there been no error, for [in] that instance 'there is no nexus sufficient to provide a taint.'") (quoting U.S. v. Jones, 72 F.3d 1324, 1330 (7th Cir.1995) (quoting Nix v. Williams, 467 U.S. 431, 448, 104 S. Ct. 2501, 2511 (1984)), reh'g and suggestion for reh'g in banc denied)).

As noted above, Ridley also asserts that his rights under Article 1, § 11 of the Indiana Constitution were violated, arguing that "the inevitable discovery exception has not been adopted as a matter of Indiana constitutional law" and that "[a]ccordingly, the violation of Miranda in Ridley's case cannot be 'validated' by a claim of inevitable discovery. The gun was found as a result of the violation, and should have been suppressed." Appellant's Brief at 10 (quoting Ammons v. State, 770 N.E.2d 927, 935 (Ind. Ct. App. 2002), trans. denied).

The search and seizure analysis under Article 1, § 11 of the Indiana Constitution is slightly different than under the Fourth Amendment of the United States Constitution. The purpose of Article 1, Section 11 is "to protect from unreasonable police activity those areas of life that Hoosiers regard as private." Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995). In deciding whether a warrantless search and seizure violates Article 1, § 11, we must determine whether, under the totality of the circumstances, the search was reasonable. Id. The determination of the reasonableness of a search or seizure often "turn[s] on a balance of: (1) the degree of concern, suspicion, or knowledge that a

violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).

Here, as noted above at the time of the search Ridley was being handcuffed pursuant to the presumed marijuana discovered by Officer Mann. Thus, there was obviously a high degree of knowledge that a violation had occurred. Also, "[a]lthough the search of a person's body is a substantial intrusion, a police officer is authorized to conduct a thorough search of an arrestee." Edmond v. State, 951 N.E.2d 585, 592 (Ind. Ct. App. 2011). Regarding law enforcement needs, "[a] search incident to arrest serves important purposes, such as ensuring that the arrestee is unarmed, preventing the arrestee from bringing contraband into jail, and preventing the destruction of evidence." Id. Taking account of the totality of the circumstances, Ridley's rights under Article 1, § 11 were not violated. Finally, to the extent that Ridley suggests that, under Ammons, we should account for "whether the defendant was advised of his Miranda rights prior to the request to search," Appellant's Brief at 9, we note that Ammons examined Callahan v. State, 719 N.E.2d 430 (Ind. Ct. App. 1999), a case in which an officer during a traffic stop asked for the defendant's consent to search the vehicle, and noted that the arresting officer "did not place Callahan under arrest or restrain his liberty in any way until after he discovered the marijuana in the spare tire carrier. Accordingly, Callahan was not advised of his Miranda rights prior to the search." Callahan, 719 N.E.2d at 435.

We conclude that the trial court's admission of the gun into evidence did not constitute fundamental error.

9

## II.

The second issue is whether Ridley's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). Ridley argues that "[t]he nature of this offense is passive, a 'status' offense" and that he "has only one prior felony, predicate offense for the crime," and he "asks that this court consider his wish to improve his circumstances and reduce his sentence to six years, the minimum, or alternatively to allow for placement in Community Corrections for the balance of his time." Appellant's Brief at 11-12.

Our review of the nature of the offense reveals that Ridley was arrested after Officer Mann identified what appeared to be marijuana sitting in his lap, and while making the arrest Officer Mann discovered that Ridley was carrying a gun in his jacket despite having previously been convicted of robbery as a class B felony. In addition, Ridley did not have a permit to carry the gun. During his arrest, Ridley apologized to Officer Mann for carrying the gun. Additionally, when the jail wagon driver arrived on the scene he asked Ridley if he had "any more marijuana on him" and Ridley "came clean and said he had some down the crotch of his pants," and the jail wagon driver recovered the substance that Ridley had directed him to. Transcript at 48.

Our review of the character of the offender reveals that Ridley, who was twenty-five years old at sentencing, had a criminal history. As a juvenile, in October 2001 a true finding was entered against Ridley for battery and he was placed on probation. He was found in violation of his probation on January 2, 2002. Also, in February of 2003 a true finding was again entered against Ridley for battery. As an adult, in 2004 Ridley was charged with criminal mischief; Ridley's presentence investigation report notes that this charge was dismissed due to an "essential police witness not [being] present." Presentence Investigation Report at 6. Also in 2004, Ridley pleaded guilty to robbery as a class B felony. He served part of his executed sentence in the Department of Correction and was subsequently transferred to the Marion County Community Correction program for which he received an unsuccessful discharge from the jail component on January 13, 2006. He also received an unsuccessful discharge during the initial executed term phase from the Community Transition Residential Component on July 24, 2006.

After due consideration for the sentence imposed by the trial court, we cannot say that Ridley's sentence, composed of the advisory term of ten years for unlawful possession of a firearm by a serious violent felon as a class B felony, is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Ridley's conviction and sentence for unlawful possession of a firearm by a serious violent felon as a class B felony.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.

11