**Robert G. THACKER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 4–682A147.

Court of Appeals of Indiana, Fourth District.

Nov. 10, 1982.

Lewellyn H. Pratt, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., James W. Turpen, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant Robert Thacker appeals from a trial court's administrative finding under our Implied Consent Law that he knowingly refused to take a breathalyzer test, such refusal resulting in the suspension of his driver's license for one year. The sole question presented for our review is whether, despite a driver's verbal consent, his belligerent behavior constitutes a refusal to take the test. We affirm.

### FACTS

The facts are generally undisputed and viewed in the light most favorable to the State are as follows:

On the morning of February 12, 1982, Officer Quilla observed an automobile, driven by Thacker, disobey an automatic signal at an intersection. He followed the car into a nearby parking lot, where, on his approach, Thacker exited his car. Quilla immediately noticed Thacker's movements

were very slow, he appeared to be intoxicated and his breath smelled of alcohol. When Quilla asked Thacker to produce his driver's license, Thacker refused, wanting to know what he had done wrong. Quilla repeatedly asked Thacker for his driver's license. Finally, Thacker fumbled through the papers in his wallet, pulling out what he thought was a driver's license and offered it to Quilla. This was not his license and Quilla repeated his request. Quilla noticed a baseball bat in the back seat of Thacker's car and, fearing Thacker would try to use it, moved closer to him continuing to ask him for his license. At this point, Quilla took Thacker by the left arm and asked Thacker to turn around. Thacker jerked away from Quilla and Quilla placed Thacker against the car where a struggle ensued. At this time Officers Haverstock and Stevens arrived and assisted Quilla in restraining Thacker. When Thacker refused to enter the back seat of the squad car and started kicking the officers, his hands and feet were hand-cuffed. At this point, Quilla advised Thacker of the Indiana Implied Consent Law and asked Thacker if he would take the breath test. He responded, "I give up, I'll take the test." Upon their arrival at the police station and while Thacker was still in the patrol car, Quilla again asked him if he wanted to take the test. Thacker consented a second time. Thacker's legs were then freed, but he immediately became violent, kicking the officers and resisting their attempts to remove him from the patrol car. Quilla's supervisor recommended the test not be given to Thacker because his violence constituted a threat to the examining equipment. Quilla then signed the certification of refusal.

## DECISION

Thacker asserts the evidence before the court established he twice verbally consented to take the breath test. Thus, he claims the trial court erred in finding he made a willful and knowing refusal.

Our Indiana Consent Law contains the following provisions, in pertinent part, relative to the administrative proceedings in the trial court:

(a) When a certification of refusal to submit to a chemical test is submitted to the court, it shall hold a separate hearing on the matter of the test refusal for the determination of the following matters:

(1) Did the law enforcement officer have probable cause to believe that the accused had committed the offense of operating a motor vehicle while intoxicated under IC 9–4–1–54? In determining this issue, the court may consider matters alleged in a sworn probable cause affidavit submitted by the law enforcement officer or other witness, or the sworn testimony of any witnesses made a matter of record. Such affidavit or testimony may contain statements of:

(i) erratic or unusual driving behavior;

.   .   .   .   .

(iii) behavior of accused when detained, such as his ability to speak, finger dexterity, steadiness on feet, ability to perform simple tests requiring normal coordination or balance;

(iv) odor of alcoholic beverages, presence of alcoholic beverage containers or controlled substances;

.   .   .   .   .

(2) Did the law enforcement officer offer to the accused the opportunity to submit to a chemical test before placing the accused under arrest for such offense, and was the accused physically and mentally able to provide a breath sample? In determining these issues, the court may consider the written statements of the law enforcement officer on the certification of refusal of chemical test form, in addition to other relevant evidence, including testimony of the officer, the accused, and witnesses, if any.

.   .   .   .   .

(e) If the court finds that such refusal was made knowingly or because of the state of intoxication of the accused, it shall forward such finding to the commis-

sioner of motor vehicles on a form to be provided by the commissioner, along with the current driving license of the accused, and it shall recommend to the commissioner that the driving privileges of the accused remain suspended for one (1) year from the date of said finding and the commissioner shall comply with said recommendation."

Ind.Code 9–4–4.5–4.

■■■ We first observe that our scope of review of the trial court's finding, as stated by Judge Young in *Jaremczuk v. State,* (1978) Ind.App., 380 N.E.2d 615

"is limited to determining whether the evidence is sufficient as a matter of law to support the finding that the arresting officer had probable cause to stop the appellant-defendant and the finding that appellant-defendant knowingly refused to submit to a chemical test. . . . We will not weigh the evidence or determine the credibility and will accept that evidence presented to the trial court most favorable to the decision below."

*Id.* at 616. *See also Steward v. State,* (1982) Ind.App., 436 N.E.2d 859.

■ Thacker has not challenged the court's finding that Quilla had probable cause to believe Thacker had committed the offense of operating a motor vehicle while intoxicated. Therefore, we direct our attention to the facts surrounding his alleged refusal to take the test. It is uncontested that at the arrest scene Thacker, after being restrained, consented to take the test. While still under restraint in the squad car at the police station, he again verbally consented. However, when Thacker's legs were freed and while still in the squad car, he again became violent by kicking the officers and refusing to leave the car. Because of the extreme violence exhibited by Thacker, it was determined by police authorities not to attempt to administer the test, deeming his conduct as constituting refusal. We conclude that no reasonable person could contest the finding of the trial court that the violent acts of Thacker constituted his refusal to take the test.

Our Courts have had an opportunity to examine circumstances from which a defendant's *conduct* established refusal. In *Jaremczuk v. State, supra* the accused driver verbally consented to take the test but when the machine operator asked him to blow into the mouthpiece of the machine he feigned cooperation by puffing out his cheeks and pretending to blow. We concluded his routine of pretense constituted a knowing refusal to submit to the test. In *Hatch v. State,* (1978) Ind.App., 378 N.E.2d 949, where the driver took the mouthpiece to his mouth but would not blow into it with sufficient force to fill the sample capsule, the Court treated the failure to give a suitable sample as a refusal to take the test.

In *Steward v. State,* (1982) Ind.App., 436 N.E.2d 859 the driver, after agreeing to take the test, recanted and informed the officer he was not answering questions or taking any tests until he spoke with a lawyer. This conduct was held to be equivalent to a refusal. Again, in *Davis v. State,* (1977) 174 Ind.App. 433, 437, 367 N.E.2d 1163, 1166, a driver contended the officer's refusal to allow him to consult with his attorney prior to the test rendered his declination to be not a knowing and willful one. In concluding Davis had no constitutional right to consult with counsel prior to or during the taking of the test, the Court referred to the following language in *Swenumsom v. Iowa Department of Public Safety,* (1973) Iowa, 210 N.W.2d 660:

"Although courts in some jurisdictions equivocate as to propriety of delay in response to the request, we share the view expressed by the New Jersey court in *People v. Pandoli,* [ (1970) 109 N.J.Super. 1, 262 A.2d 41, 42]:

'Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that *anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so.* [citation] The occasion is not one for

debate, maneuver or negotiation, but rather for a simple "yes" or "no" to the officer's request. Id., 262 A.2d at 42.' (Our emphasis.)"

*Davis v. State, supra* at 1166.

Thus, our Courts have held that both feigning attempts to perform the test and equivocation by requesting counsel constitute refusal. We now find that recalcitrant behavior such as occurred here, which physically impedes or threatens to impede the administration of the test, also constitutes refusal.

Affirmed.

YOUNG, P.J., and CONOVER, J., concur.