STATE of Indiana, Appellant–Plaintiff,

v.

Larry RAY, Appellee–Defendant.

No. 89A01–0708–CR–396.

Court of Appeals of Indiana.

May 9, 2008.

Rehearing Denied June 27, 2008.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Terry O'Maley, Boston Bever Klinge Cross & Chidester, Richmond, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The State appeals the trial court's order upon its judicial review of the suspension of the driving privileges of Larry Ray for refusal to submit to a chemical test.

We reverse.

### ISSUE

Whether the trial court erred in finding that pursuant to Indiana's Implied Consent Law, in order to effect the suspension of driving privileges for a refusal to consent to a chemical test for intoxication, the person must have been warned of that consequence *after* he has refused to submit to such a test.

*FACTS*

On the evening of March 17, 2007, Wayne County Sheriff's Department Deputy Alan Campbell encountered Ray and developed probable cause to believe that Ray had been operating a vehicle while intoxicated. It is undisputed that Campbell read to Ray the following Implied Consent Law warning ("the warning"):

I have probable cause to believe that you've operated a vehicle while intoxicated. I must now offer you the opportunity to submit to a chemical test and inform you that your refusal to submit to a chemical test will result in a suspension of your driving privileges for one year. If you have at least one previous conviction for operating while intoxicated, your refusal to submit to a chemical test will result in a suspension of your driving privileges. Will you now take a test?

(Tr. 4). Ray responded that he was "not sure what [he] should do" and "want[ed] to talk to [his] lawyer." (Tr. 26). Campbell told him "that wasn't an issue right now," that he needed "to answer yes or no." *Id.* Campbell read the warning to him again. Ray then agreed to take the test. Campbell informed him that it "would be a blood draw," for which he would be taken to Reid Memorial Hospital.

Officer Baker, the assisting officer, transported Ray to the hospital, where Campbell met them at the emergency room. The three went to a partitioned area of the emergency room. Campbell read the warning to Ray a third time, "to make sure that he understood what his options were." (Tr. 26). Ray again agreed that he would submit to the test. Campbell then filled out and presented to Ray a hospital medical screening examination waiver form. (Ex. A). The form indicated that Campbell, a law enforcement officer, had brought Ray "to Reid Hospital for drug and/or alcohol testing," and that Campbell did not seek to have Ray "examined by a physician" for any other purpose. (Ex. A). The form contained a line for Ray's signature, which indicated that he was there "for drug and/or alcohol testing" and waived medical examination by a physician. *Id.* Campbell explained the form to Ray.

Ray commenced speaking in a loud voice, prompting the request by hospital staff that the officers take him to an enclosed room so as not to disturb others. There in the enclosed room, over the next 7–10 minutes, Campbell again explained the hospital waiver-of-medical-examination form, that he was there only for drug and/or alcohol testing, and indicated to Ray where he should sign it. According to Campbell, he showed Ray the form and, after Ray had read the form, he handed Ray a pen to sign the form. Ray "became angry" and accused Campbell of lying to him about where to sign the form. (Tr. 17). At that point, Ray again stated that he wanted to contact his lawyer, and Campbell told him that that was not an option "at this point." (Tr. 27). Ray indicated that he would not sign the form. Campbell asked for his pen back. Ray refused and "pulled away" and held onto the pen, prompting the officers to restrain him to avoid "get[ting] stabbed with the pen." (Tr. 21). Campbell then "decided" that Ray had refused the chemical test. *Id.*

On March 20, 2007, the State charged Ray with operating a vehicle while intoxicated, a class A misdemeanor. On July 9, 2007, Ray filed a petition for a judicial review hearing pursuant to Indiana Code section 9–30–6–10, along with his sworn statement that he "did not legally refuse to take any chemical test validly offered to [him]." (App.8).

The trial court held the hearing on August 1, 2007. Ray asserted that he was not challenging Campbell's probable cause to believe that he had been operating a vehicle while intoxicated but only "the consent issue," whether he "refused to submit to the chemical test that was offered by Deputy Campbell as a law enforcement officer." (Tr. 2, 1–2). Campbell testified to the above facts about the evening of March 17, 2007. Ray testified that Campbell had advised him of the Implied Consent Law, and had read it to him "multiple times." (Tr. 33). Ray further testified that Campbell had advised him that the test would be performed at the hospital and that hospital staff would take a sample of his blood.

On August 1, 2007, he trial court issued its order on judicial review, with required findings of fact.[1] The trial court found as facts (1) that Campbell "read the required and proper Implied Consent warning" to Ray "at least three times"; (2) that Ray initially consented to the chemical test; and (3) that at the hospital, Ray "through aggressive, hostile and inappropriate actions, withdrew his consent to take the chemical test." (App.11). The trial court found that by "his actions at the hospital," Ray had "withdrawn any consent to take a chemical test," after having previously been given the proper warning at least three times; and that Ray "was well aware that refusal w[ould] result in suspension of his driving privileges." *Id.* However, the trial court proceeded to conclude that the Implied Consent Law required a " 'secondary' warning" of the license suspension consequence *after* Ray had expressed the refusal to consent to the chemical test. *Id.* Accordingly, because Campbell did not give Ray a " 'secondary' warning," the trial court ordered to be vacated "the prior determination that [Ray] had refused to

submit to the chemical test," and the suspension of Ray's driving privileges. (App.12).

### DECISION

■ The State argues that the trial court erred when it interpreted Indiana Code section 9–30–6–7 to require that a person be given yet another warning of the consequences of refusing to submit to a chemical test *after* having so refused. We agree.

■ Interpretation of a statute is a matter of law which we review de novo. *Jacks v. State,* 853 N.E.2d 520, 522 (Ind. Ct.App.2006). The cardinal rule of statutory construction is to determine and give effect to the true intent of the legislature. *Id.* To do this, we interpret the statute according to the ordinary and plain meaning of the language used, absent a clearly manifested purpose to do otherwise. *Id.* Further, we presume that the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *State v. Evans,* 810 N.E.2d 335, 337 (Ind.2004) (quoting *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind. 2002)). Moreover, when interpreting the words of a single section of a statute, the appellate court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *N.D.F. v. State,* 775 N.E.2d 1085, 1088 (Ind.2002).

■ We begin by noting that "the law recognizes no fundamental right to drive." *Mitchell v. State,* 659 N.E.2d 112, 116 (Ind. 1995). We have explained that the statutory scheme governing the use of motor vehicles conditions the use of a driver's license on the observation of certain rules

---

1. *See* Ind.Code § 9–30–6–11(b).

and operating standards for general reasons of public safety. *See Cosby v. State,* 738 N.E.2d 709, 712 (Ind.Ct.App.2000) (citing *Schrefler v. State,* 660 N.E.2d 585, 588 (Ind.Ct.App.1996)). That said, we turn to Indiana's Implied Consent Law—which begins with the provision that "a person who operates a vehicle impliedly consents to submit to the chemical test provisions of this chapter as a condition of operating a vehicle in Indiana." Ind.Code § 9–30–6–1. When a law enforcement officer has probable cause to believe that a person has committed an operating-while-intoxicated offense, the officer "shall offer the person the opportunity to submit to a chemical test." I.C. § 9–30–6–2. The statute establishes the legal requirements of such a chemical test. I.C. §§ 9–30–6–4, –5, and—6.

Thereafter, the section at issue herein provides the following:

(a) If a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges.

(b) If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges or submits to a chemical test that results in prima facie evidence of intoxication, the arresting officer shall do the following:

(1) Obtain the person's driver's license or permit if the person is in possession of the document and issue a receipt valid until the initial hearing of the matter held under I.C. 35–33–7–1.

(2) Submit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred.

(3) Send a copy of the probable cause affidavit submitted under section (2) to the bureau.

I.C. § 9–30–6–7. However, as noted above, preceding this section, the legislature had already provided that submission to a chemical test was "a condition of operating a vehicle in Indiana," and that an officer having probable cause to believe that a person was driving while intoxicated "shall offer the person the opportunity to submit to a chemical test." I.C. §§ 9–30–6–1, and –2.

█ It is true that the statute does not specify the wording of the "offer" that the officer must make to the suspected intoxicated driver regarding the opportunity to submit to a chemical test. As the State suggests, it appears that the statute would allow a two-step procedure: the officer advises the driver that the Implied Consent Law requires him/her to make the offer of a chemical test and asks if the driver is willing to submit to the test; then, if the offered is refused, the officer would explain that the consequence of refusal is the suspension of driving privileges for one year. However, we see no impediment to the statute being satisfied by an advisement that covers *both* the offering of a chemical test and the warning that if the chemical test is refused, the consequence will be the suspension of driving privileges for one year. When we interpret statutes, we construe them with due regard for all other sections of the act and honoring the legislative intent to carry out the spirit and purpose of the act. *N.D.F.,* 775 N.E.2d at 1088.

In *State v. Huber,* 540 N.E.2d 140 (Ind. 1989), *trans. denied,* we were asked whether this language of Indiana Code section 9–30–6–7 [2] in the Implied Consent Law

2. The provision was then found at Indiana Code section 9–11–4–7, having been adopted

required the "arresting officer to advise a person of the consequences of refusing to submit to a chemical test, before the person's refusal will result in a suspension of driving privileges." *Id.* at 141. We found that the statute indeed required the officer to "advise the person of the consequences of refusing to submit to a chemical test, before steps are taken to suspend that person's driving privileges for test refusal." *Id.* Further, we noted that "the legislature has required a warning phrased in absolute terms," *id.* at 142, and held that the statute mandated an advisement stating "that refusal *will* result in suspension" of the person's driving privileges. *Id.* (emphasis in original).

As indicated above, Deputy Campbell advised Ray three separate times that his "refusal to submit to a chemical test will result in a suspension of your driving privileges for one year." (Tr. 4). In fact, Ray testified that Campbell had read the warning to him "multiple times." (Tr. 33). There was no evidence that Ray did not understand the advisement and the consequence of his refusing a chemical test. We find that it would be a statutory interpretation producing an "absurd result[ ]" to require that despite the multiple warnings that expressly advised Ray that if he refused to consent to the chemical test, his license would be suspended, the statute nevertheless requires that he be so advised again after he refused the chemical test. *Evans,* 810 N.E.2d at 337.

Deputy Campbell's advisements to Ray complied with the statute, and the evidence established that Ray refused to consent to the chemical test offered. Therefore, the trial court erred as a matter of law when it held that these facts failed to

satisfy the statutory requirements for suspension of Ray's license.

Reversed.

BAKER, C.J., and BRADFORD, J., concur.

in Public Law 126–1989, Section 11. The provision has since remained unchanged in substance (the only difference being the previous inclusion of the word "and" after the second subsection of (b)).