**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK K. PHILLIPS**
Phillips Law Office
Boonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES EDWIN GORIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 87A01-1209-CR-442 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Robert W. Aylsworth, Judge
Cause No. 87D02-1107-CM-624

**April 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

James Goris ("Goris") was convicted after a jury trial of Operating a Vehicle with an Alcohol Concentration Equivalent Between 0.08 and 0.15, as a Class C misdemeanor,[1] and Failure to Obey a Stop Sign at a Through Highway, as a Class C infraction.[2] He now appeals.

We affirm.

**Issues**

Goris raises several issues for our review, which we restate as:

I.      Whether the trial court abused its discretion when it excluded Defense Exhibit F;

II.     Whether the admission into evidence of Goris's statements to police during a traffic stop violated Goris's <u>Miranda</u> rights;

III.    Whether the chemical breath test was invalid because Goris was allegedly improperly advised under Indiana's Implied Consent Law; and

IV.     Whether the trial court erred when it failed to admonish the jury regarding the inadmissibility of portable breath test results.

**Facts and Procedural History**

On June 19, 2011, Patrolman Rodney Forston ("Patrolman Forston") of the Chandler Police Department observed a car driven by Goris fail to come to a complete stop at the intersection of Plank and Gardner Roads, in Warrick County, Indiana. The car eventually turned onto State Road 261, where Patrolman Forston initiated a traffic stop.

When Patrolman Forston approached Goris's car, he smelled an odor of alcohol.

---

[1] Ind. Code § 9-30-5-1(a).

[2] I.C. § 9-21-8-32.

2

Goris gave Patrolman Forston his driver's license and car registration, and stepped out of the car at Patrolman Forston's request. When asked if he had had anything to drink, Goris replied that he had consumed two beers.

Patrolman Forston administered three standardized field sobriety tests, including a horizontal gaze nystagmus test, a walk-and-turn test, and a one-legged stand test. Goris did not complete the horizontal gaze nystagmus test, and failed the other two tests. Patrolman Forston then read Goris the Indiana Implied Consent Law advisement from a card, which stated:

> I have probable cause to believe that you have operated a vehicle while intoxicated. I must now offer you the opportunity to submit to a chemical test and inform you that your refusal to submit to a chemical test will result in the suspension of your driving privileges for one year. If you have at least one previous conviction for operating while intoxicated, your refusal to submit to a chemical test will result in the suspension of your driving privileges for two years.

(State's Ex. 2.) Goris refused to take a chemical breath test, and was transported to the Warrick County Security Center. There, Patrolman Forston again read Goris the Implied Consent Law advisement, at which point Goris agreed to take a chemical breath test.

Sergeant Richard Barnett of the Warrick County Sherriff's Department administered a chemical breath test using a DataMaster instrument, which showed that Goris's Alcohol Concentration Equivalent was 0.09. Goris then was formally arrested and advised of his Miranda rights.[3]

On July 8, 2011, the State charged Goris with Operating a Vehicle with an Alcohol

---

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

Concentration Equivalent Between 0.08 and 0.15, as a Class C misdemeanor (Count I); Operating a Vehicle While Intoxicated, as a Class C misdemeanor (Count II);[4] and Failure to Obey a Stop Sign at a Through Highway, as a Class C infraction (Count III).

On September 10 and 11, 2012, a jury trial was held, at the conclusion of which the jury found Goris guilty as charged of Counts I and III. The trial court entered judgments of conviction; imposed a sentence of sixty days imprisonment, all suspended; and ordered that he serve one year of probation.

Goris now appeals.

**Discussion and Decision**

Defense Exhibit F

At trial, Goris proffered Defense Exhibit F, an inspection and verification form from the Indiana State Department of Toxicology ("ISDT") for the DataMaster instrument used to administer the chemical breath test. The State objected on several grounds, including the late production of the exhibit. The trial court sustained the objection "if for nothing else, for the late production[;] I've enforced this Rule on the State several times in several different cases." (Tr. at 264.) Goris then made an offer of proof, stating:

> . . . [The] Toxicology DataMaster Inspection Verification for machine 960118[,] which was conducted on February 16th of '11 and which is inspected by and subject to the penalties for perjury Tom Prince [on] February 16 of '11[,] would show, if it were offered into evidence[,] that there is a test – the .08 test actually came back .07 – and that would have a material effect on the accuracy of the machine.

(Tr. at 264.)

---

[4] I.C. § 9-30-5-2(a).

4

Goris contends, inter alia, that the trial court abused its discretion when it excluded Exhibit F. "[O]n review, . . . [we] will only examine what actually transpired at the trial." Clausen v. State, 622 N.E.2d 925, 928 (Ind. 1993). Here, while the State objected on several grounds, the trial court excluded the exhibit on the basis of a purported discovery violation. Even assuming, without deciding, that the trial court erred when it excluded Exhibit F, "an erroneous exclusion of evidence does not[] . . . require a reversal if 'its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights.'" Rohr v. State, 866 N.E.2d 242, 246 (Ind. 2007) (quoting Williams v. State, 714 N.E.2d 644, 652 (Ind. 1999)); see also Ind. Trial Rule 61.

As best we can discern, it appears that Goris wished to use Exhibit F to challenge the certification of the DataMaster instrument, thus challenging the validity of the chemical breath test forming the basis of his conviction for Operating a Vehicle with an Alcohol Concentration Equivalent Between 0.08 and 0.15.

Under the Indiana Administrative Code, all breath test instruments must be inspected and certified at least once every one-hundred-eighty days, and:

(e)  All breath test instruments shall meet the following standards:

(1)  Certification tests shall be made using known ethanol-water or ethanol-gas solutions, approved by the director, to simulate a breath sample.

(2)  The test results shall not deviate more than minus eight percent (-8%) from the known ethanol content of the ethanol-water or ethanol-gas vapor.  For example, a solution of ethanol in water that produces a vapor having eight-hundredths (0.08) grams of ethanol per two hundred ten (210) liters shall test within the range of seventy-four thousandths

5

(0.074) to eighty-thousandths (0.080) grams per two hundred ten (210) liters.

(3)   For the purpose of inspecting the breath test instrument, the analytical result shall be expressed to the third decimal place.

(4)  Other tests that are not part of the inspection may be performed at the time of the inspection.

260 Ind. Admin. Code 1.1-2-1(e).

Another panel of this court has held that, in order for a chemical breath test machine to be properly certified under Section 1.1-2-1, at least two tests must be performed to verify the accuracy of the machine.  Nivens v. State, 832 N.E.2d 1134, 1138 (Ind. Ct. App. 2005).

These tests must (1) be made using known ethanol-water or ethanol-gas solutions; (2) produce results that do not deviate more than minus eight percent from the known alcohol content of the ethanol-water or ethanol-gas solution; and (3) express the analytical result of the test to the third decimal place.  If ISDT were to perform two tests that satisfied each of these standards, then, according to Title 260, section 1.1–2–1, the chemical breath test machine could be properly certified.  Any further tests conducted by ISDT, beyond these two required tests, are merely further assurance of the machine's accuracy and are not required by Title 260, section 1.1–2–1.  Since further testing is not required, the results of these tests need not be expressed to the third decimal place.  Thus, Title 260, section 1.1–2–1(e)(3) does not require that the results of multiple tests done to assess the accuracy of the Data[M]aster machine each be expressed to the third decimal place.

Id.

Here, the first page of Exhibit F reveals that, when a solution simulating an Alcohol Concentration Equivalent of 0.08 was input into the instrument, the instrument gave a reading of 0.07.  However, subsequent pages of Exhibit F reveal that, for the same solution, the instrument gave readings of 0.077, 0.075, 0.075, 0.075, and 0.075.  Later in the same diagnostic session, another test was conducted with the same solution, and the instrument

6

gave readings of 0.078, 0.077, 0.077, 0.077, and 0.078. The results of these two tests satisfy the requirements of 260 I.A.C. 1.1-2-1, and thus we cannot agree that the DataMaster instrument in question was not properly certified. Therefore, we cannot conclude that Goris's substantial rights were affected, and any error in the exclusion of Exhibit F was harmless.

### Miranda Warning

Goris next contends that "the trial court erred in allowing Patrolman Forston to testify regarding statements made by Goris prior to being read his rights [as required under Miranda]." (Appellant's Br. at 18.) Goris challenges the admission into evidence of Patrolman Forston's testimony regarding Goris's statement that he had consumed two beers earlier in the evening. (Tr. at 71-72.)

Goris also appears to challenge the admission into evidence of Patrolman Forston's testimony regarding Goris's responses to Patrolman Forston's questions as to why Goris would not want to submit to a chemical breath test. (Tr. at 102.) However, we are unable to glean from the record what statements, if any, Goris may have made in response to Patrolman Forston's questions, therefore we do not address Goris's challenge to these statements. See Bass v. State, 797 N.E.2d 303, 305 (Ind. Ct. App. 2003) (it is not this court's role to develop arguments for parties on appeal).

"Wide discretion is afforded the trial court in ruling on the admissibility . . . of evidence." Nicholson v. State, 963 N.E.2d 1096, 1099 (Ind. 2012). "We review evidentiary decisions for abuse of discretion and reverse only when the decision is clearly against the

7

logic and effect of the facts and circumstances." Id. "Miranda prohibits the introduction at trial of any statement, 'whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" Cliver v. State, 666 N.E.2d 59, 66 (Ind. 1996) (quoting Miranda, 384 U.S. at 444). "These protections are applicable only if the defendant has been subjected to custodial interrogation, which is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Id. (quoting Miranda, 384 U.S. at 444).

"Ordinarily, persons detained for traffic stops are not 'in custody' for purposes of Miranda." Lockett v. State, 747 N.E.2d 539, 543 (Ind. 2001) (citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984)). In distinguishing between custodial encounters and non-custodial encounters, the ultimate inquiry is whether there was a formal arrest, or a restraint on freedom of movement of the degree associated with a formal arrest. Meredith v. State, 906 N.E.2d 867, 873 (Ind. 2009). We consider all circumstances surrounding the encounter, and apply an objective test asking whether a reasonable person under the same circumstances would believe that he was under arrest or otherwise not free to resist the entreaties of the police. Id. Factors we consider are whether the defendant was read his Miranda rights; whether he was handcuffed or restrained in any way; whether he was told that he was a suspect in a crime; whether the police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about his business; and the length of the detention. Id.

Here, Goris's statement was made shortly after Patrolman Forston initiated the traffic stop. (Tr. at 70-72.) Immediately after Goris gave Patrolman Forston his driver's license and car registration, Patrolman Forston asked him if he had had anything to drink that evening, to which Goris responded that he had consumed two beers. (Tr. at 71-72.) At that time, Goris was neither handcuffed nor physically restrained in any way, and he had not been told he was a suspect in a crime. There is no indication that Patrolman Forston suggested Goris should cooperate or implied adverse consequences for noncooperation. While Goris was not free to leave due to the inherent nature of a traffic stop, there is no indication that the length of this phase of the traffic stop was abnormal, or that the encounter at that point in time was anything beyond a routine traffic stop. Therefore, when Goris stated that he had consumed two beers, he was not "in custody" for purposes of <u>Miranda</u>, and thus was not entitled to the protections thereof. We find no abuse of discretion in the admission into evidence of his statement to Patrolman Forston.

However, even if Goris's statement to Patrolman Forston had been admitted into evidence in violation of <u>Miranda</u>, statements obtained in violation of <u>Miranda</u> and erroneously admitted are subject to an analysis for harmless error. <u>See</u> <u>Alford v. State</u>, 699 N.E.2d 247, 251 (Ind. 1998). "The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." <u>Barker v. State</u>, 695 N.E.2d 925, 931 (Ind. 1998).

Here, Patrolman Forston observed Goris driving a vehicle that failed to stop at the

9

intersection of Plank and Gardner Roads. After initiating a traffic stop, Patrolman Forston smelled an odor of alcohol when he approached Goris's car. Goris was administered a standardized chemical breath test at the Warrick County Security Center, which showed that his Alcohol Concentration Equivalent was 0.09. Therefore, Goris's convictions were supported by such substantial independent evidence that there is no substantial likelihood that Goris's statement to Patrolman Forston contributed to the convictions, and any error in the admission thereof was harmless.

<u>Validity of Offer of Breath Test</u>

Goris next claims that Patrolman Forston administered an Implied Consent advisement using the word "may" as opposed to "shall," and that the chemical breath test thus was invalid because Goris was not accurately advised as to the consequences of refusing to submit to a chemical breath test.[5]

Under Indiana's Implied Consent Law, "[a] person who operates a vehicle impliedly consents to submit to the chemical test provisions of this chapter as a condition of operating a vehicle in Indiana." I.C. § 9-30-6-1. Furthermore, "[i]f a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges." I.C. § 9-30-6-7(a). Such an advisement must be phrased in absolute terms, and the advisement must state "'that refusal <u>will</u> result in suspension' of the person's driving privileges." <u>State v. Ray</u>, 886 N.E.2d 43, 48 (Ind. Ct.

---

[5] In the argument sections addressing this issue in both his appellant's brief and reply brief, Goris emphasizes his allegation that the standardized field sobriety tests were not administered correctly. However, we observe that his conviction for Operating a Vehicle with an Alcohol Concentration Equivalent Between 0.08 and 0.15 is based on an Alcohol Concentration Equivalent number, not on the results of a field sobriety test.

App. 2008) (emphasis in original) (quoting State v. Huber, 540 N.E.2d 140, 142 (Ind. Ct. App. 1989), trans. denied).  When a police officer fails to advise the driver, in such absolute terms, as to the consequences of refusal to submit to a chemical breath test, the test has not been properly "offered" to the driver and the driver cannot be found to have refused to submit to the test.  Vetor v. State, 688 N.E.2d 1327, 1329-30 (Ind. Ct. App. 1997).

Here, Goris cites to Vetor for the proposition that "failure to make a valid offer of the test results in an invalid test." (Appellant's Br. at 17; Appellant's Reply Br. at 6.)  However, this argument misconstrues Vetor, in which a defendant challenged the suspension of his driver's license following his failure to submit to a chemical breath test.  Here, Goris ultimately consented to the chemical breath test, and he challenges the results of the test. Therefore, Vetor is inapposite to this case, and we find no reversible error with regard to the chemical breath test.

Failure to Admonish Jury

Finally, Goris contends that the trial court erred when it failed to admonish the jury regarding the inadmissibility of portable breathalyzer test ("PBT") results.  Patrolman Forston testified that he "administered a field sobriety test . . . [a] P.B.T." (Tr. at 72.)  In response, the State asked, "A portable breathalyzer test?" (Tr. at 72.)  At which point Goris objected, and Patrolman Forston continued, testifying that "[Goris] didn't—he didn't [take] it correctly." (Tr. at 72.)  Goris again objected on the basis of the inadmissibility at trial of portable breathalyzer test results, and requested that the jury be admonished as to the inadmissibility of the test results. (Tr. at 72.)  The State responded that it would not elicit the

11

results of the portable breathalyzer test, but that "the fact that the test was given is admissible[.]" (Tr. at 72-73.) The trial court then encouraged the State to continue its direct examination of Patrolman Forston, but did not admonish the jury as Goris requested. (Tr. at 73.)

We review a trial court's evidentiary rulings for abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances. Nicholson, 963 N.E.2d at 1099. "Whether to admonish the jury is within the trial court's discretion[,] and reversible error will be found only where the defendant demonstrates that the trial court's failure to admonish the jury placed the defendant in a position of grave peril." Purcell v. State, 406 N.E.2d 1255, 1259 (Ind. Ct. App. 1980) (citing Marsh v. State, 393 N.E.2d 757, 760 (Ind. 1979), overruled on other grounds by Beattie v. State, 924 N.E.2d 643 (Ind. 2010)).

PBTs "provide a simple method for a threshold determination [as to] whether a person has consumed alcohol." State v. Whitney, 889 N.E.2d 823, 828 (Ind. Ct. App. 2008). "While PBT results are not admissible at trial, they can help officers determine whether to offer standardized chemical tests that are admissible to demonstrate intoxication." Id.

Here, the results of the PBT were neither offered nor admitted into evidence. Instead, Patrolman Forston testified that a PBT had been administered, which Goris failed to take properly. Furthermore, a standardized chemical breath test was administered to Goris at the Warrick County Security Center, and the results of that test were properly admitted into evidence at trial. See discussion supra. Thus, we cannot agree that the trial court's failure to

12

admonish the jury regarding the inadmissibility of a PBT was error.  Moreover, the absence of an admonition certainly did not place Goris in a position of grave peril.

## Conclusion

Any error in the exclusion of Exhibit F was harmless; the trial court did not abuse its discretion regarding the admission of Goris's statements to Patrolman Forston, and any potential error was harmless.  We find no reversible error with regard to the chemical breath test or the trial court's failure to admonish the jury.

Affirmed.

NAJAM, J., and BARNES, J., concur.